UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

DONALD C.[1],

                              Plaintiff,

      v.                                Case # 19-CV-1585-FPG
                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
───────────────────────────────────

## INTRODUCTION

Plaintiff Donald C. brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff applied for DIB and SSI on January 20, 2016, alleging disability due to epilepsy, shallow breathing, and learning issues. Tr.[2] 190, 192, 196, 202, 239. After the Social Security Administration ("SSA") denied his application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 41-79. On October 11, 2018, the ALJ issued an unfavorable decision. Tr. 17-35. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 16. For the following reasons, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and this matter is DISMISSED WITH PREJUDICE.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only the first name and last initial.
[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

1

**LEGAL STANDARD**

**I.     District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citations omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 23.

At step two, the ALJ assessed Plaintiff with the following severe impairments: a learning disorder, a seizure disorder, a breathing-related disorder, and a gait disturbance due to lower extremity tremors. Tr. 23. The ALJ also assessed various non-severe impairments, including, as relevant here, a cervical spine disorder and hand tremors. Tr. 23.

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment. Tr. 24.

The ALJ then determined that Plaintiff retained the RFC to perform light work, except that Plaintiff was limited to: lifting and carrying no more than 20 pounds occasionally and ten pounds frequently; sitting for six hours and standing or walking for two hours in an eight-hour workday, and using an assistive device occupying one upper extremity as needed while walking; never crawling; never climbing ladders, ropes, or scaffolds; never balancing on wet, uneven, or vibrating surfaces; no more than occasional climbing of ramps or stairs, stooping, kneeling, or crouching; avoiding concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dust, gases, chemicals, and poorly ventilated areas; avoiding exposure to unprotected heights, driving, and operating heaving moving machinery; no more than frequent handling, fingering, and feeling with the bilateral upper extremities; performing simple, repetitive work tasks in non-fast and non-assembly line type production paced settings; and making simple work related decisions and adapting to simple changes in a routine setting. Tr. 26-27.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 33.

At step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy. Tr. 33. Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 34.

## II. Analysis

### A. Non-Severe Impairments

Plaintiff first argues that the ALJ's failure to recognize Plaintiff's bilateral hand tremor, cervical stenosis with spinal cord impingement, and intellectual disability as severe impairments at step two was harmful error because it tainted later steps of the sequential evaluation and resulted in an RFC determination which was not based on substantial evidence. The Court disagrees.

The failure to find a specific impairment severe at step two is harmless where the ALJ identifies at least one other severe impairment and proceeds through the remainder of the sequential evaluation by considering the combined effects of all severe and non-severe impairments. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order); *Adanma T. v. Comm'r of Soc. Sec.*, No. 5:20-CV-00173 (TWD), 2020 U.S. Dist. LEXIS 210960, at *10 (N.D.N.Y. Nov. 12, 2020); *Michael B. v. Saul*, No. 8:19-CV-507 (DJS), 2020 U.S. Dist. LEXIS 175243, at *9 (N.D.N.Y. Sept. 24, 2020).

Here, the ALJ identified several severe impairments at step two: a learning disorder, a seizure disorder, a breathing related disorder, and a gait disturbance due to lower extremity tremors. Tr. 23. The ALJ then proceeded through the remainder of the sequential evaluation and considered both Plaintiff's severe and non-severe impairments. First, while the ALJ did not identify an "intellectual disability" as a severe impairment, he did identify a "learning disorder" as

4

a severe impairment, and he included mental limitations in the RFC determination to account for it.  Next, even though the ALJ found Plaintiff's hand tremor to be non-severe, he still limited Plaintiff to no more than frequent handling, fingering, and feeling with the bilateral upper extremities.  Tr. 27.  Finally, while the ALJ did not impose a specific neck- or spine-related restriction, he did limit Plaintiff to sitting for six hours and standing or walking for only two hours in an eight hour workday, and he explained in his RFC analysis that during a consultative examination with David Brauer, M.D., Plaintiff exhibited full range of motion in the cervical and lumbar spine, shoulders, and other regions.  Tr. 29.  Accordingly, the ALJ's failure to characterize these impairments as severe was not harmful error.

Plaintiff further argues that the ALJ's RFC limitations regarding his non-severe impairments are not supported by substantial evidence.  In making this argument, however, Plaintiff essentially cites evidence that he believes supports his position that his limitations are disabling.  But the question before this Court "is not whether substantial evidence supports plaintiff's position, but whether it supported the ALJ's decision." *Anderson v. Colvin*, No. 1:14-CV-01038 (MAT), 2017 U.S. Dist. LEXIS 100308, at *6 (W.D.N.Y. June 28, 2017); *see also Cartagena v. Comm'r of Soc. Sec.*, No. 18-CV-245-FPG, 2019 U.S. Dist. LEXIS 168712, at *10-11 (W.D.N.Y. Sept. 27, 2019) ("[W]here substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion.").  Here, the Court finds that substantial evidence supports the ALJ's RFC limitations related to Plaintiff's non-severe impairments.

Regarding his hand tremors, Plaintiff asserts that he has trouble using a computer, writing, holding objects, and using zippers and buttons.  ECF No. 10-1 at 22-24.  He also cites portions of the record wherein treatment providers observed and reported his hand tremors during

5

examinations. ECF No. 10-1 at 24; Tr. 458, 472, 476, 480, 484, 486, 490, 492, 495, 498, 499, 509, 688, 716, 736. While this evidence does support the position that Plaintiff has limitations resulting from his hand tremors, it does not necessarily support greater limitations than the ALJ imposed. Moreover, the ALJ explicitly considered this evidence, *see* Tr. 23, 27, and other substantial evidence supports the ALJ's limitation to only frequent handling, fingering, and feeling. For instance, consultative examiner Dr. Brauer reported that Plaintiff's hand and finger dexterity was intact, and his grip strength was 5/5. Tr. 398. Dr. Brauer imposed no hand-related limitations. Tr. 398. Plaintiff also reported that he could bathe, dress, and groom himself independently. Tr. 456. The ALJ noted that Plaintiff's tremors and seizures began when he was about 14 years old, but they did not prevent him from performing a semi-skilled job as a Community Program Aide for the State of New York for nearly 13 years. Tr. 51-52, 70-71, 298. Additionally, in December 2017, Plaintiff told one of his treating providers, Shannon Colemna, PA, that his tremors were stable with an adjusted medication dosage. Tr. 30, 477.

Regarding Plaintiff's learning disability, consultative examiner Janine Ippolito, Psy.D., opined that Plaintiff had, at most, a mild neurocognitive disorder, which would not preclude his ability to follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; perform complex tasks independently; relate adequately with others; and deal appropriately with stress. Tr. 388. Dr. Ippolito also found that Plaintiff had, at most, mild limitations in the ability to make appropriate decisions and learn new tasks. Tr. 388. After reviewing Dr. Ippolito's examination report and opinion, as well as the other evidence of record, the state agency consulting psychological expert, Dr. Tzetzo, opined that Plaintiff could perform simple work activities. Tr. 88, 102. Additionally, in a March 2018 Determination of Developmental Disability, Kateri

Solberg—a service coordinator at Heritage Christian Services—found that Plaintiff showed few signs of a disabling developmental disability. After an intake interview, Ms. Solberg found that Plaintiff was very goal oriented and liked to look ahead and plan for the future; had great self-advocacy skills; had a determination to succeed in life; had developed good relationships, especially with his family; was able to make important decisions independently; was able to make informed choices; and was independent in the community. Tr. 699, 703. And, as the ALJ acknowledged, Ms. Solberg noted that Plaintiff attributed his inability to work to his physical condition, not his learning disability. Tr. 32, 699.

Plaintiff argues that the ALJ erred in failing to discuss a 1994 psychological report by psychologist Lee F. DeCoster, Ph.D. Tr. 690. Dr. DeCoster performed IQ and other cognitive tests. He found that Plaintiff could not understand two or more variables, was not competent to make his own medical decisions, and suggested that a guardianship may be required. Tr. 696. He had concerns about Plaintiff's ability to maintain personal hygiene due to lack of internal motivation, and opined that Plaintiff had weak adaptive skills. Tr. 696. He stated that Plaintiff was able to appear more capable than he was but ultimately lacked understanding, despite displaying good diction. Tr. 697. Based on Plaintiff's test scores, Dr. DeCoster assessed a verbal IQ of 76, a performance IQ of 70, and a full-scale IQ of 73. Tr. 692. However, he opined that Plaintiff's IQ was functionally 60, noting that his scores were likely inflated by good memory skills. Tr. 696.

Although the ALJ did not discuss this decades-old report, an ALJ "is not obligated . . . to explicitly reconcile every conflicting shred of medical testimony." *Conlin v. Colvin*, 111 F. Supp. 3d 376, 388 (W.D.N.Y. 2015); *see also Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that "an ALJ is not required to discuss every piece of evidence submitted," and an

"ALJ's failure to cite to specific evidence does not indicate that such evidence was not considered."). The ALJ considered other—and more recent—evidence of Plaintiff's mental limitations, including other evaluations of Plaintiff's IQ. For example, the ALJ cited a 2003 evaluation in which Plaintiff's IQ was estimated to be 65, and Dr. Ippolito's 2016 evaluation in which Plaintiff's IQ was estimated to be 58. Tr. 688, 391. Based on the evidence, the ALJ limited Plaintiff to performing simple, repetitive work tasks in a non-fast and non-assembly line-type production paced setting; making only simple work-related decisions; and adapting to only simple changes in a routine setting. Tr. 27, 30.

Plaintiff argues that the ALJ's failure to discuss the 1994 report was specifically harmful because that report proves that Plaintiff cannot perform jobs with a GED Reasoning Level of 3, which are the jobs that the ALJ found Plaintiff was able to perform at step 5. Tr. 34. But at the hearing, the VE found that Plaintiff's former job as a Community Program Aide fell under GED Reasoning Level 4. Tr. 70-71. Although Plaintiff argues that he did not really perform the job duties at that high level of skill, the VE—who heard Plaintiff's testimony about his job—found that Plaintiff's job duties matched the Community Program Aide job as it is defined in the DOT, with the only exception of exertional level. Tr. 70-71. The ALJ was allowed to rely on the VE's testimony about Plaintiff's past relevant work, and that testimony constitutes substantial evidence. 20 C.F.R. §§ 404.1560(b), 404.1566(d)-(e).

Finally, Plaintiff makes little argument regarding his spinal impairment. No source imposed a neck- or back-related limitation, and examination findings showed full range of motion. *See, e.g.*, Tr. 397, 475.

In sum, the ALJ appropriately considered Plaintiff's non-severe impairments in crafting his RFC. "While Plaintiff may disagree with the ALJ's conclusions, the Court must 'defer to the

Commissioner's resolution of conflicting evidence' and reject the ALJ's findings 'only if a reasonable factfinder would have to conclude otherwise.'" *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277-FPG, 2020 U.S. Dist. LEXIS 220601, at *15-16 (W.D.N.Y. Nov. 24, 2020) (citing *Morris v. Berryhill*, 721 F. App'x. 25, 29 (2d Cir. 2018) (summary order)). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Id.* (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted)). Here, the Court finds that "[s]ubstantial evidence supports the ALJ's RFC and plaintiff failed to meet his burden to prove medical impairments with limitations greater than found by the ALJ." *Cur v. Comm'r of Soc. Sec.*, No. 19-cv-01039, 2020 U.S. Dist. LEXIS 206179, at *18-19 (W.D.N.Y. Nov. 4, 2020). Accordingly, remand is not warranted.

### B.   Need for Walker

Plaintiff next argues that the ALJ erred in restricting him to standing or walking for two hours a day while using an assistive device in one hand (*i.e.*, a cane), instead of restricting him to using a walker. ECF No. 10-1 at 28. Like Plaintiff's previous argument, this argument is based on Plaintiff's interpretation of evidence which he believes supports the need for a walker. However, substantial evidence supports the ALJ's cane restriction.

As Plaintiff concedes, no treating doctor ever prescribed an assistive device. Some treating providers did encourage Plaintiff to use an assistive device, but they did not necessarily recommend a walker over a cane. For example, treating provider Shannon Coleman, PA, encouraged Plaintiff to use a walker *or cane*. Tr. 510. But Plaintiff did not consistently use either device because of the "weather" and because it did not "look cool." *Id.* Additionally, state agency consulting medical expert, T. Bessent, M.D., reviewed the evidence and found that Plaintiff needed

a cane when he was walking during the workday. Tr. 515. While the record evidence clearly supports ambulation-related limitations—as Plaintiff was consistently described as having an ataxic gait and limitations due to his seizures and tremors—the ALJ appropriately limited him to standing or walking for only two hours a day and provided for a cane despite the lack of any prescription for one by a treating physician. The Court finds no error here. *See generally, e.g.*, *Cartagena v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 168712, at *11 (W.D.N.Y. Sept. 27, 2019) (affirming ALJ's RFC determination that plaintiff needed a cane for ambulation despite plaintiff's argument that he needed it for balance, where substantial evidence supported both plaintiff's and ALJ's positions).

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 10, is DENIED, the Commissioner's motion, ECF No. 16, is GRANTED, and this matter is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 4, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court